JOHN O. YEISER, APPELLEE, V. FRANK A. BROADWELL ET AL., APPELLANTS.

FILED OCTOBER 7, 1910. No. 16,655.

Insolvent Debtor: RIGHT TO EMPLOY ATTORNEY. "An insolvent debtor has the right to employ attorneys to defend his estate and himself, and to transfer his property in payment of such contemplated services, provided it is done in good faith and the property transferred does not exceed a reasonable fee for the service which might be reasonably anticipated." *Farmers & Merchants Nat. Bank v. Mosher*, 63 Neb. 130.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*Byron G. Burbank, Lysle I. Abbott* and *John T. Cathers,* for appellants.

*Sullivan & Rait* and *John O. Yeiser, contra.*

LETTON, J.

This is the second appearance of this case in this court. The facts are stated in the former opinion, *Yeiser v. Broadwell*, 80 Neb. 718. On the former appeal the judgment of the district court was reversed on account of the denial of a jury trial. After being remanded the case was submitted to a jury, which returned a general verdict for the plaintiff, and also made special findings as follows: "Question 1. What are the services shown by the evidence to have been rendered the Lintons by plaintiff John O. Yeiser reasonably worth over and above the cash payments shown by the evidence to have been made by the Lintons to plaintiff? Answer to question 1. Four thousand dollars. Question 2. Was the assignment by the Lintons to plaintiff John O. Yeiser made in order to hinder, delay, cheat or defraud the creditors or some creditor of the said Lintons? Answer to question 2. No." Judgment was rendered upon the verdict, from which the plaintiff has appealed.

The controversy in this case is over the right to a fund in the hands of the defendant Broadwell, clerk of the district court, arising from rents of property of the Lintons. Yeiser claims the right to the fund by virtue of an oral agreement made in May, 1902, whereby it was agreed that he was employed as attorney to attend to litigation in Nebraska concerning the property of the Lintons, and that the rents and revenue from their real estate should be his and be applied by him in part payment for his services; and by virtue of a written telegraphic order to W. K. Potter, receiver of the Omaha Loan and Trust Company, who had theretofore been collecting these rents, as follows: "Pay John O. Yeiser any money in your hands due the undersigned;" and by virtue of later written instruments, one dated April 20, 1903, directing Broadwell to pay the plaintiff any funds in his hands belonging to the Lintons; and by certain later written assignments and orders, dated in 1904, whereby all the right, title, and interest of the Lintons in and to any rents due or to become due belonging to them were assigned by the Lintons to Mr. Yeiser. The interveners Cathers and Paxton claim the fund by virtue of certain garnishment proceedings instituted on March 23, 1905, whereby it was sought to apply the fund upon a judgment against the Lintons. The issues of fact involved were as to the value of Yeiser's services, and whether the oral agreement and the subsequent assignments and orders by which the money derived from rents was assigned to Yeiser were fraudulent in their nature and void as against creditors.

The evidence establishes that at the time of the alleged oral agreement the Lintons were engaged in extensive and important litigation involving large amounts of money and property, and that Yeiser was the only attorney employed by them. The verdict and special findings of the jury have conclusively settled that Yeiser rendered services exceeding in value the amount of the fund, and that the assignment was made to him in good faith before the garnishment proceedings were begun.

The remaining questions are as to whether the court erred in its statement and application of the law. The appellants strenuously contend that the parol contract made in May, 1902, whereby Yeiser was to act as attorney and to apply the rents of the real estate in payment for his fees, was void, being violative of several provisions of the statute of frauds. We find it unnecessary to consider this question, since Mr. Yeiser's right to the rents does not rest entirely upon the oral contract. Even if we should agree with the appellants' view that the court erred in the admission of the parol agreement as to the rents, still the error could in nowise prejudice them because the evidence clearly shows ample consideration for the subsequent written assignments, which were made long before the garnishment.

Appellants' next contention is that the court erred in submitting a special finding as to the value of Mr. Yeiser's services, and in this connection they complain that the court erred in refusing to give instructions Nos. 5, 6 and 7 asked by them. These instructions were to the effect that the alleged parol contract made in May, 1902, was null and void, that under the pleadings and evidence the plaintiff cannot recover, and that transfers of property by an insolvent client to his attorney are presumptively fraudulent.

Appellants argue as to the first point: That there had been no settlement between Yeiser and the Lintons; that the question of the amount due could not be litigated in this action, and it was error to submit it; but they overlook the fact that the first and second instructions requested by them sought to leave to the jury the question as to the reasonable value of Yeiser's services, and whether they were a full and fair consideration for the assignments. This we think was a proper and necessary inquiry under the issues, and was properly submitted.

Considering the next contentions, the district court instructed the jury in substance that the burden of proof was upon the plaintiff to establish that he gave an ade-

quate consideration for the assignment, and that the burden of proof was upon the appellants to establish that the assignment was made in fraud of the creditors of the Lintons; that if they found from the evidence that Yeiser's services were worth over and above the money paid to him direct as much or more than the amount of the fund, and that the assignment was not made in order to hinder, delay, or defraud creditors, then the plaintiff might recover; but that if the plaintiff had failed to establish that his services were worth the amount of the fund, or if they found that the assignment was made in order to hinder, delay, or defraud the creditors of the Lintons, then they should find for the interveners. The jury were also instructed that the Lintons were insolvent at the time of the assignment, and that transfers of property to an attorney by an insolvent client are to be subjected to close scrutiny, and if the alleged consideration is disproportionate to the services rendered, or if the attorney's charges are exorbitant, such transfers will be set aside; but that fraud is not presumed from the mere fact that an insolvent debtor assigns property or pays money to his attorney for services rendered or to be rendered in the future.

The relations existing between an insolvent client and his attorney, and the respective rights of client, attorney, and creditor have been fully considered by this court in *Farmers & Merchants Nat. Bank v. Mosher,* 63 Neb. 130, 68 Neb. 713. The same contention was then made as to the transaction being presumptively fraudulent. In the first opinion the court say on this point: "The proof is clear that the services performed under the employment were fairly and reasonably worth the amount paid Mosher. The plaintiff practically concedes that fraudulent intent did not exist in this transaction, as a matter of fact, but contends that this transfer is one which the law makes fraudulent. A very able and exhaustive brief has been filed by plaintiff in support of this contention, but, viewed in the light of our statutory enactments and the decisions of our own court, we think the position untenable"—and

held that the question of fraud in such a transaction is one of fact, and not of law, citing section 20, ch. 32, Comp. St. 1899. In the syllabus it is said: "An insolvent debtor has the right to employ attorneys to defend his estate and himself, and to transfer his property in payment of such contemplated services, provided it is done in good faith and the property transferred does not exceed a reasonable fee for the service which might be reasonably anticipated " In the second opinion it is held that a creditor seeking to attack such a transfer should do so before services to the full value of the property are rendered. In the light of these rules, we are of opinion that the refusal of the in- structions complained of was entirely proper, and that the law was properly laid down in the instructions given by the court.

Finally, the appellants strongly urge that the judgment must be reversed on account of the fourth instruction given by the court. This instruction is as follows: "You are instructed that, if you find that the consideration given by the plaintiff to the Lintons for the assignment to him of the fund in question was not equal in value to the amount of said fund, that fact would not of itself render the assignment fraudulent." It is said this is contrary to the rule in *Switz v. Bruce*, 16 Neb. 463, and *Henney Buggy Co. v. Ashenfelter*, 60 Neb. 1. We have no desire to change the rule announced in those cases, but since the jury found that the value of Yeiser's services was $4,000; that the transaction was not entered into for the purpose or with the fraudulent intent of defeating the creditors of the Lintons; and since the fund is less than $2,000, this instruction, even if erroneous, could not prejudice the appellants. Moreover, we think this instruction, when considered in connection with the other instructions, correctly states the law as applicable to the facts in this case. Before Yeiser's employment by the Lintons, Cathers had been their attorney. He sought to reach their property for the purpose of paying their indebtedness to him. Long before he had acquired any valid

lien upon this fund, Yeiser accepted employment as their attorney, and rendered continuing services as such, which at the time of the garnishment exceeded in value the amount of the fund. The rents were transferred to him in payment of such services, and were not disproportionate to the value of the contemplated service.

The circumstances of the case are somewhat peculiar, but the findings of the jury settle the facts, and we find no error in the record. The judgment of the district court is, therefore,

AFFIRMED.

FAWCETT, J., not sitting.