**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
**Respondent,**

v.

**Cheryl BAINBRIDGE, Appellant,**

and

**Conrad J. Monaco, Defendant.**

**No. WD 52517.**

Missouri Court of Appeals,
Western District.

Jan. 21, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 1997.

Application to Transfer Denied
April 29, 1997.

Gary Bradley, Lexington, for appellant.

Michael McCausland, Kansas City, for respondent.

SPINDEN, Judge.

State Farm Mutual Automobile Insurance Company filed a declaratory judgment action asking the circuit court to declare that it was not obligated to defend or to indemnify Conrad J. Monaco in a wrongful death action. The circuit court granted summary judgment for State Farm. We affirm.

On February 16, 1993, Jason Maun was killed in an automobile accident while riding in a 1979 Ford Bronco driven by Monaco. The collision occurred when Monaco did not stop the truck for a stop sign and struck another vehicle. Monaco pleaded guilty to not stopping his vehicle for the stop sign. At the time, Maun and Monaco were employed by L & L Maintenance, a partnership of Leslie Cole and Lorraine Rocha. Cole owned the Ford Bronco driven by Monaco, and State Farm insured it with a $250,000 liability policy.

State Farm also insured four vehicles owned by Monaco's parents, and Monaco was covered while driving these vehicles. The total liability limit of the four Monaco policies was $350,000. All of these policies were in effect on the date of the accident. The insurance policies issued by State Farm to the Monacos were the same as the policy issued to Cole.

During January 1994, Maun's mother, Cheryl Bainbridge, sued Monaco for her son's wrongful death. Monaco demanded that State Farm defend him pursuant to the Cole or Monaco policies. State Farm denied liability coverage based upon the "fellow-employee exclusion" contained in the Cole policy and the "non-owned car" provision in the Monaco policies. State Farm then filed this action seeking the court's declaration that it had no obligation to defend or to indemnify Monaco under any of the policies.

The circuit court sustained State Farm's motion for summary judgment on the ground that Monaco was excluded from coverage under the fellow-employee exclusion contained in the Cole policy and under the "non-owned car" provision in the Monaco policies. Bainbridge appeals.

In her first two points, Bainbridge contends that the circuit court erred in granting summary judgment for State Farm because material issues of fact were still in dispute. Unsettled, she claims, were issues concerning whether Cole did business as a corporation, partnership or sole proprietorship; whether Cole employed Maun and Monaco; whether the truck driven by Monaco was a "non-owned car" as defined by the Monaco policies and whether it was used in business, and

whether it qualified as a passenger car; whether State Farm understood the terms of the insurance policies; and whether Cole intended to have full coverage and to comply with the law regarding mandatory liability insurance.

The Supreme Court of Missouri has instructed:

[W]hen the movant makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in ... Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial.

*ITT Commercial Finance v. Mid–America Marine Supply*, 854 S.W.2d 371, 381 (Mo. banc 1993). If the opposing party cannot contradict the facts asserted by the party moving for summary judgment, the circuit court should grant the party's motion. *Id.*

State Farm denied that it had any duty to defend Monaco under the Cole policy because the policy specifically excluded coverage of a "fellow employee." That provision said:

THERE IS NO COVERAGE:

. . . .

2. FOR ANY *BODILY INJURY* TO:

a. A FELLOW EMPLOYEE WHILE ON THE JOB AND ARISING FROM THE MAINTENANCE OR USE OF A VEHICLE BY ANOTHER EMPLOYEE IN THE EMPLOYER'S BUSINESS. *You* and *your spouse* are covered for such injury to a fellow employee.

b. ANY EMPLOYEE OF AN *INSURED* ARISING OUT OF HIS OR HER EMPLOYMENT. This does not apply to a household employee who is not covered or required to be covered under any worker's compensation insurance.

State Farm submitted various documents, including affidavits, depositions, a certificate of title indicating that Cole owned the 1979

Ford Bronco. In his affidavit and deposition, Cole said that he owned the Ford Bronco driven by Monaco at the time of the accident; that at the time of the accident, Maun and Monaco were "fellow employees" who worked for him; that at the time of the accident, he employed Maun and Monaco, and they were using his Ford Bronco within the course and scope of their employment for him; that he was the named insured under the automobile liability insurance policy issued by State Farm; and that L & L Maintenance was a partnership of which he was a part-owner.

State Farm also submitted sworn testimony by Monaco. In a deposition, Monaco said that he was driving the 1979 Ford Bronco owned by his employer, Leslie Cole, at the time of the accident and that Maun was a fellow employee.

In its order granting summary judgment, the circuit court found that the parties did not dispute that Monaco was driving a vehicle owned by Cole at the time of the accident; that Monaco and Maun were fellow employees working for Cole; that Cole was a partner in L & L Maintenance Company at the time of the accident; and that L & L Maintenance did not begin doing business as a corporation until May 1993, approximately two and one-half months after the accident. The court concluded that Monaco was precluded from coverage under the Cole policy because of the fellow employee exclusion; therefore, State Farm had no obligation to defend him in the wrongful death suit.

The facts in this case are similar to those in *Baker v. DePew*, 860 S.W.2d 318 (Mo. banc 1993). In that case, an employee claiming the benefit of coverage (Baker) and the injured party (DePew) were employed by the same firm. Baker sued DePew for injuries suffered while riding in the back of a truck driven by DePew during the course of their employment. The truck's insurer denied liability coverage and refused to defend DePew based on the fellow employee exclusion clause which excluded coverage for any bodily injury to anyone who is a fellow employee of the insured.[1] The trial court granted the

insurer's motion for summary judgment on the basis that DePew was excluded from coverage under the fellow employee exclusion clause. The Supreme Court affirmed.

■ In this case, the affidavits and depositions submitted by State Farm were sufficient to establish that the "fellow employee" provision of Cole's policy precluded coverage. The circuit court properly concluded that the policy, as a matter of law, did not obligate State Farm to defend and to indemnify Monaco.

■ Bainbridge asserts that Monaco and Maun actually were employed by L & L Maintenance, not by Cole. She argues that although Cole was a partner of L & L Maintenance, he should have been treated as a separate entity from the partnership. We disagree. A partnership is not a legal entity separate from its individual partners. "An employee of a partnership is an employee of each individual partner." *Kelley v. DeKalb Energy Company*, 865 S.W.2d 670, 671 (Mo. banc 1993). As a partner of L & L Maintenance, Cole was Monaco's and Maun's employer.

■ State Farm denied liability coverage under the Monaco policies on the basis of the "non-owned car" provision. Those provisions said:

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others, and

   b. damage to or destruction of property including loss of its use, caused by accident resulting from the ownership, maintenance or use of *your car*; and

2. defend any suit against an *insured* for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

. . . .

**Coverage for the Use of Other Cars**

---

1. DePew was treated as an insured under the policy pursuant to the omnibus coverage provision and severability clause.

The liability coverage extends to the use, by an *insured,* of a *newly acquired car,* a *temporary substitute car* or a *non-owned car.*

The policy defined a "non-owned car:"

*Non-Owned Car*—means a *car* not owned by or registered or leased in the name of:

1. *you, your spouse;*

2. any *relative* unless at the time of the accident or loss:

   a. the *car* is or has been described on the declarations page of a liability policy within the preceding 30 days; and

   b. *you, your spouse* or a *relative* who does not own or lease such *car* is the driver.

3. any other *person* residing in the same household as you, *your spouse* or any *relative;* or

4. an employer of *you, your spouse* or any *relative.*

The circuit court found that, in addition to the facts about the accident previously mentioned, the parties did not dispute that Monaco was a resident of his parent's household at the time of the accident; that the four State Farm policies issued to the Monacos represented their total insurance coverage on the date of the accident; and that the truck driven by Monaco was not a "newly acquired car" or a "temporary substitute car," as defined by the Monaco policies. The court concluded that the truck driven by Monaco at the time of the accident was not a "non-owned car" under the Monaco policies and that coverage was barred.

We concur. As the term is defined in the policy, a "non-owned car" did not include a vehicle owned by an employer of either a named insured, the named insured's spouse, or any relative of the named insured. The Ford Bronco driven by Monaco at the time of the accident was owned by his employer Cole. Because Monaco's employer owned the Ford Bronco, it did not fall within the definition of a "non-owned car" under the policy. Accordingly, we need not address whether the Ford Bronco was also a "private passenger car," as Bainbridge asserts, because that

definition would come into play only if the Bronco were a "non-owned car."

Bainbridge also argues that the "non-owned car" provision in the Monaco policies is ambiguous and should have been construed against State Farm. We disagree.

Ambiguity is duplicity, indistinctness, or uncertainty in the meaning of a policy's language. *Killian v. State Farm Fire & Casualty Company,* 903 S.W.2d 215, 218 (Mo.App.1995). Policy language which is plain and unambiguous must be enforced as written. *Schuster v. Shelter Mutual Insurance Company,* 857 S.W.2d 381, 384 (Mo. App.1993).

We find no ambiguity in the "non-owned car" provision. The definition of a "nonowned car" under the policy excludes cars owned by the employer of a relative of a named insured. Monaco was related to a named insured, and his employer owned the vehicle he drove at the time of the accident. We believe it clear that the vehicle did not fall within the definition of a "non-owned car."

Bainbridge also argues that the trial court erred because Cole and Domenick Monaco reasonably expected that they had purchased complete liability coverage for their own protection. We disagree again.

The "reasonable expectations doctrine" is not invoked without an ambiguity in the contract language. *Rodriguez v. General Accident Insurance Company of America,* 808 S.W.2d 379, 382 (Mo. banc 1991). The doctrine should not be applied where policy language is unambiguous, *Killian,* 903 S.W.2d at 218. We have already determined that the policies were not ambiguous. The doctrine does not apply to this case.

In her final point, Bainbridge claims the "non-owned car" provision violated public policy as embodied by Chapter 303, RSMo 1994 (the Motor Vehicle Financial Responsibility Law). Section 303.025 says:

1. No owner of a motor vehicle registered in this state shall operate the vehicle, or authorize any other person to operate the vehicle, unless the owner maintains the financial responsibility as required in this

section. Furthermore, no person shall operate a motor vehicle owned by another with the knowledge that the owner has not maintained financial responsibility which covers his operation of the other's vehicle.

2. A motor vehicle owner shall maintain his financial responsibility in a manner provided for in section 303.160, or with a motor vehicle liability policy which conforms to the requirements of the laws of this state.

The Missouri Supreme Court addressed this issue in *First National Insurance Company of America v. Clark,* 899 S.W.2d 520 (Mo. banc 1995). One of the arguments raised by the appellant in that case was that the public policy of Missouri required the court to ignore the "non-owned" auto provision in the insurance policy. The appellant argued that § 303.025 required all drivers to maintain financial responsibility and that the "non-owned" auto provision violated that policy. The Supreme Court disagreed and held that the "non-owned" auto provision was enforceable:

> The public policy of this state is satisfied when there is an owner's policy of liability insurance sufficient to meet the minimum requirements of Missouri's financial responsibility law. Sec. 303.025. It is sufficient to say that because there was an owner's policy in effect, no operator's policy of liability insurance on the same vehicle is required by the Missouri financial responsibility law. Thus, the exclusion in the operator's provision of the [car] policy will be enforced as written[.]

*Id.* at 523.

In *Schuster v. Shelter Mutual Insurance Company,* 857 S.W.2d 381, 384–85 (Mo.App. 1993), this court's Southern District held that a "non-owned" car provision in a liability policy did not violate public policy as embodied by § 303.190. The court found that the liability policy expressly designated coverage for the plaintiff's vehicle and any "non-owned" automobile under the policy.

In this case, the Monacos had a liability coverage for their vehicles. This was sufficient to meet the requirements of Chapter 303. The Monaco policies' "non-owned car"

provision, therefore, did not violate public policy.

For these reasons, we affirm the judgment.

SMART, P.J., and ELLIS, J., concur.