Joyce **REESE**, Teresa Reese, and April Reese–Imbrogno, **Respondents**,

v.

**UNITED STATES FIRE INSURANCE COMPANY, Appellant,**

**Charles Mizer, Defendant.**

**No. WD 63555.**

Missouri Court of Appeals, Western District.

June 30, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 30, 2005.

Application for Transfer Denied Nov. 1, 2005.

John E. Turner, Timothy W. Monsees, Kansas City, MO, for Respondents.

David R. Buchanan, Dennis J. Cassidy, Kansas City, MO, T. Michael Ward, St. Louis, MO, for Appellant.

Before HOWARD, P.J., and ULRICH and BRECKENRIDGE, JJ.

PER CURIAM.

Appellant United States Fire Insurance Company ("USF") appeals from a judgment in the Circuit Court of Jackson County, which awarded Respondents Joyce Reese, Teresa Reese, and April Reese–Imbrogno ("the Reeses") an equitable garnishment of $1,000,000 against USF pursuant to section 379.200 [1] as a result of judgments against KCR International Truck, Inc., and Charles Mizer for the wrongful death of Gerald Reese. USF argues three points on appeal. In Point I, USF argues the trial court erred in denying USF's motion to set aside the December 31, 2002 judgment and to quash the Reeses' equitable garnishment action against USF, because the trial court lacked subject matter jurisdiction, in that the Reeses previously obtained satisfaction of their damages resulting from their decedent's wrongful death, and as a result, the July 23, 2001 judgment against Charles Mizer, for which the Reeses seek equitable garnishment, is null and void. In Point II, USF argues the trial court erred in entering judgment in favor of the Reeses and against USF, because coverage for Charles Mizer under the liability insurance policy was precluded, in that Mizer was a fellow employee of Gerald Reese and the policy includes an unambiguous "fellow employee" exclusion, such that parol evidence should not be considered. In Point III, USF argues the trial court erred in denying USF's motion to set aside the December 31, 2002 judgment and to quash the Reeses' equitable garnishment action against USF, because the trial court lacked subject matter jurisdiction, in that the Reeses' allegations against Charles Mizer failed to meet the "something extra" required to take a tort action outside the purview of Workers' Compensation Law, and as a result, the July 23, 2001 judgment, for which the Reeses seek equitable garnishment, is null and void. For the reasons set forth below, the judgment of the trial court is affirmed.

## Background

Gerald Reese was killed in an accident on March 17, 1995, when a load of rock from a dump truck was dumped onto him while he was working for Barber & Sons quarry. Charles Mizer ("Mizer") was driving the dump truck at the time of Gerald Reese's death. Gerald Reese was the husband of Joyce Reese and the father of Teresa Reese and April Reese–Imbrogno. When the fatal accident occurred, Mizer was driving a dump truck that was owned by Barber & Sons.

At the time of Gerald Reese's death, Barber & Sons carried a Business Auto Insurance policy with USF. The insurance policy provided, in relevant part:

### A. COVERAGE

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

. . . .

### 1. WHO IS AN INSURED

The following are "insureds":

---

1. Statutory references are to Revised Statutes of Missouri 2000.

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow

. . . .

## B. EXCLUSIONS

This insurance does not apply to any of the following:

. . . .

3. WORKERS' COMPENSATION

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY

"Bodily Injury" to:

a. An employee of the "insured" arising out of and in the course of employment by the "insured"; or

b. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone who must pay damages because of the injury.

. . . .

5. FELLOW EMPLOYEE

"Bodily Injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment.

Following the accident, the Reeses received workers' compensation benefits from Barber & Sons. The Reeses also filed a civil lawsuit for the wrongful death of Gerald Reese against Mizer and KCR International Truck, Inc. (KCR), in the Circuit Court of Jackson County, which was assigned case number CV97–8519. The Reeses dismissed Mizer from that case and proceeded to trial against KCR. The jury returned a verdict finding both KCR and Gerald Reese 50% at fault and finding the Reeses' damages to be $2,000,000. Based on comparative fault, the net recovery to the Reeses was $1,000,000, and the trial court judge entered judgment in that amount for the Reeses and against KCR on September 23, 1999.

On or about September 23, 1999, the Reeses instituted another lawsuit in the Circuit Court of Jackson County against Mizer seeking damages for the wrongful death of Gerald Reese, designated case number 99CV–220923. The Reeses brought the lawsuit in their individual capacities, seeking consequential damages resulting from Gerald Reese's death. The Estate of Gerald Reese was not a party to the lawsuit. Mizer tendered the defense of the Reeses' wrongful death suit to USF, but USF denied coverage and declined to defend Mizer. The Reeses and Mizer then entered into agreement pursuant to section 537.065 to limit the Reeses' recovery to insurance proceeds. On July 23, 2001, the Circuit Court of Jackson County entered a $2,000,000 judgment in favor of the Reeses and against Mizer in accordance with the terms of the agreement to limit recovery to any applicable liability insurance policies.

The Reeses then filed an equitable garnishment action against USF. The Reeses sought to have the judgment against Mizer made applicable through a finding that USF's policy covered the judgment plus interest. USF filed a counterclaim for

Declaratory Judgment seeking a determination of no coverage under the policy.

The trial court conducted a bench trial of the equitable garnishment action beginning on October 15, 2002. USF acknowledged at the trial that Mizer was covered by the insurance policy unless that coverage was precluded by an exclusion. After the opening statements by the Reeses and USF and the admission of evidence and deposition testimony, the trial was adjourned to allow USF to conduct discovery on whether the amount of the underlying judgment was reasonable. The trial was reconvened on November 12, 2002, at which point USF informed the court it would not be contesting the reasonableness of the underlying judgment.

On December 31, 2002, the trial court entered judgment in favor of the Reeses and against USF in the amount of $1,000,000, which is the amount of USF's policy limit. The trial court also found that interest on the judgment was covered under USF's policy and entered judgment in favor of the Reeses for the interest which was running on the underlying judgment entered on July 23, 2001.

USF appealed the December 31, 2002 judgment to this court, but the case was remanded because the judgment was not final. USF had filed a counterclaim for declaratory judgment seeking a finding of no coverage that had not been decided by the trial court. On remand, USF and the Reeses filed a joint motion to amend the December 31, 2002 judgment so it would be final for purposes of appeal. USF then withdrew its support of the joint motion to amend and filed a separate motion to set aside the December 31, 2002 judgment and quash the Reeses' equitable garnishment action. USF contended in its motion that the trial court lacked subject matter jurisdiction in the equitable garnishment action because the trial court lacked subject mat-

ter jurisdiction over Mizer in the underlying wrongful death judgment entered on July 23, 2001. USF asserted that the Reeses had previously obtained a judgment against another tortfeasor, thus depriving the trial court of jurisdiction in the Reeses' wrongful death action against Mizer. USF further asserted that the July 23, 2001 judgment was null and void. The trial court conducted a hearing on this matter on October 9, 2003.

On December 3, 2003, the trial court entered an amended judgment in favor of the Reeses and against USF. The amended judgment: (1) denied USF's motion to set aside the December 31, 2002 judgment and quash the Reeses' equitable garnishment action, (2) entered judgment in favor of the Reeses and against USF in the amount of $1,000,000 (liability limit under the business auto policy) plus interest on the full amount of the July 23, 2001 judgment, and (3) certified the December 3, 2003 amended judgment as final under Rule 74.01(b). This appeal follows.

## Subject Matter Jurisdiction

### (Points I and III)

USF argues two points challenging the subject matter jurisdiction of the Reeses' equitable garnishment action. In Point I, USF argues the trial court lacked subject matter jurisdiction because the Reeses previously obtained satisfaction of their damages resulting from their decedent's wrongful death. In Point III, USF argues the trial court lacked subject matter jurisdiction because the Reeses' allegations against Charles Mizer failed to meet the "something extra" required to take a tort action outside the purview of Workers' Compensation Law.

██ Subject matter jurisdiction may be raised at any time, including for the first time on appeal. *Romero v. Kansas*

*City Station Corp.*, 98 S.W.3d 129, 133 (Mo.App. W.D.2003). "Dismissal for lack of subject-matter jurisdiction is proper whenever it appears, by suggestion of the parties or otherwise, that the court is without jurisdiction." *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo.banc 2003); Rule 55.27(g)(3). "Generally, the decision to dismiss for lack of subject-matter jurisdiction is a question of fact left to the sound discretion of the trial court, and it will not be reversed on appeal absent an abuse of that discretion." *Mo. Soybean*, 102 S.W.3d at 22. However, when "the facts are uncontested, a question as to the subject-matter jurisdiction of a court is purely a question of law, which is reviewed *de novo*." *Id.*

In *Peoples Bank v. Carter*, 132 S.W.3d 302, 304 (Mo.App. W.D.2004), the appellant appealed the trial court's denial of its motion to dismiss for lack of subject matter jurisdiction, as USF does in this case. *Peoples Bank* used the same standard of review as *Missouri Soybean*, and we now use the same *de novo* standard of review in this case.

In Point I, USF argues the trial court erred in denying USF's motion to set aside the December 31, 2002 judgment and to quash the Reeses' equitable garnishment action against USF. USF claims the trial court lacked subject matter jurisdiction, in that the Reeses previously obtained satisfaction of their damages resulting from their decedent's wrongful death, and as a result, the July 23, 2001 judgment upon which the Reeses seek to equitably garnish is null and void.

In support of Point I, USF begins with the accepted notion that Missouri law prevents the Reeses from recovering more than the amount of damages sustained as a result of the wrongful death of Gerald Reese. In other words, double recovery is prohibited. USF points out that in the first wrongful death action, case number CV97–8519, the Reeses pursued claims against both KCR and Mizer, but the Reeses chose not to proceed to trial against Mizer in that cause of action, wherein the jury determined the Reeses' damages to be $1,000,000 after the negligence of Gerald Reese was compared. USF claims that the Reeses were entitled to only one wrongful death action, but in spite of this, the Reeses obtained two judgments (case numbers CV97–8519 and 99CV–220923) for the wrongful death of Gerald Reese. According to USF, when the Reeses re-filed the second suit against Mizer, they were clearly seeking a double recovery of their damages, because the amount of damages they sought was the exact amount of the net damages awarded in the first case.

USF claims the trial court had no subject matter jurisdiction to entertain the Reeses' equitable garnishment action, because the judgment against Mizer in case number 99CV–220923, which formed the basis for the Reeses' garnishment action, was null and void, in that the Reeses previously obtained satisfaction of their damages in the first suit. USF claims there is evidence in the record that the Reeses were paid a substantial amount of money on their judgment against KCR in case number CV97–8519. The Reeses dispute this claim, and the record does not disclose anywhere that the Reeses' damages have been satisfied.

The Missouri wrongful death statute, section 537.080.2, provides that "[o]nly one action may be brought under this section against any one defendant for the death of any one person." *Manes v. Depew*, 987 S.W.2d 527, 529 (Mo.App. E.D.1999), held that section 537.080.2 "does not mandate that only one wrongful death action may be prosecuted for the death of a person when there is more than one defendant."

*Manes* allowed the plaintiffs to pursue a wrongful death claim against a defendant who was not a party to a previous wrongful death action arising from the same death. *Id.*

"In Missouri, an injured party may recover for any negligent act directly contributing to his injury, regardless of what other negligent act may contribute, concur, or cooperate to produce the injury, and may prove a cause of action against each person participating in a tort." *Kayes v. Kayes,* 897 S.W.2d 51, 53 (Mo. App. E.D.1995). "Where two or more persons, although acting independently, are in combination the cause of a single injury to another, the injured person may recover for the entirety of the injury from any one or all of the tort-feasors whose acts have contributed thereto." *Koenig v. Babka,* 682 S.W.2d 96, 99 (Mo.App. E.D.1984).

In the instant case, there is more than one defendant in the wrongful death of Gerald Reese. Under section 537.080.2, the Reeses are entitled to prove a cause of action against any and all defendants that have wrongfully caused the death of Gerald Reese. Although USF correctly argues that the Reeses are not entitled to double recovery of damages in their wrongful death suit, double recovery is not at issue in this case. The Reeses merely seek to have judgment entered against all defendants liable for Gerald Reese's death. Therefore, the judgment against Mizer in case number 99CV–220923 was not null and void, and the trial court did not lack subject matter jurisdiction in either the Reeses' wrongful death action against Mizer or in the Reeses' equitable garnishment action against USF.

Point I is denied.

In Point III, USF argues the trial court erred in denying USF''s motion to set aside the December 31, 2002 judgment and to quash the Reeses' equitable garnishment action against USF, because the trial court lacked subject matter jurisdiction, in that the Reeses' allegations against fellow employee Charles Mizer failed to meet the "something extra" required to take a tort action outside the purview of Workers' Compensation Law, and as a result, the July 23, 2001 judgment upon which the Reeses seek to equitably garnish is null and void.

In support of Point III, USF cites *State of Missouri ex rel. Larkin v. Oxenhandler,* 159 S.W.3d 417 (Mo.App. W.D.2005). In *Larkin,* an employee ("Larkin") was operating a dump truck containing gravel and was preparing to back the truck up to the area where the gravel was to be dumped. *Id.* at 419. Another employee ("Blades") walked behind the dump truck to flag down passing motorists, at which point the dump truck struck Blades and backed over him, causing his death. *Id.* Blades' family sued Larkin for wrongful death. *Id.* Larkin filed a motion to dismiss for lack of subject matter jurisdiction, which the trial court denied. *Id.* at 420. Larkin then filed a writ of prohibition and a preliminary writ was issued. *Id.*

In making the writ absolute, this court held that "[a] co-employee cannot be held liable for failing to carry out the non-delegable duties of the employer." *Id.* at 421. *Larkin* provided that "[i]n order to strip a co-employee of the immunity of the Workers' Compensation Law, a petition must allege 'something extra' beyond a breach of general supervision and safety." *Id. Larkin* noted that Missouri courts have applied the "something extra" rule on a " 'case by case basis.' " *Id.* (quoting *State ex rel. Taylor v. Wallace,* 73 S.W.3d 620, 622 (Mo.banc 2002)). *Larkin* provides that "careless driving by a co-employee, without more, fails to meet the 'something extra' required to take a tort action out-

side the purview of the Workers' Compensation Law." *Id.* at 422.

*Larkin* cites *Taylor v. Wallace*, 73 S.W.3d at 622–23, which provides that "a simple allegation of negligent driving by a co-employee … is not 'something more' than an allegation of a breach of the duty to maintain a safe working environment." *Taylor* concluded that the "plaintiff's exclusive remedy [was] under the Workers' Compensation Law, and the trial court lack[ed] subject matter jurisdiction to proceed further in [the matter], other than to dismiss it." *Id.* at 623.

*Larkin* concluded that the trial court "lacked subject matter jurisdiction over the wrongful death action filed against Mr. Larkin." *Larkin*, 159 S.W.3d at 424. *Larkin* also provided that *Taylor* and other cases with consistent holdings have "effectively overruled" *Biller v. Big John Tree Transplanter Manufacturing & Truck Sales, Inc.*, 795 S.W.2d 630 (Mo.App. W.D. 1990), "to the extent that [*Biller*] is in conflict with modern precedent." *Id.* at 423.

In *Biller*, the decedent's family brought a wrongful death suit against the decedent's co-employee. *Biller*, 795 S.W.2d at 632. The co-employee was operating a tree transplanter with the decedent, and while the co-employee was operating the machine and unaware of the decedent's whereabouts, the decedent was pinned under a stabilizer bar and crushed to death. *Id. Biller* held that "[p]ersonal tort liability may be imposed on the individual agent or corporate officer if it appears that the duty of care which was breached was one personally owed to the injured employee as a fellow employee." *Id.* at 633. *Biller* concluded that the decedent's family was "entitled as a matter of law" to maintain a civil action against the co-employee "for his negligence in failing to maintain a care-ful lookout for the safety of his co-worker." *Id.* at 634.

USF argues that the facts in *Larkin* are similar to the facts in the instant case and that under *Larkin*, the trial court lacked subject matter jurisdiction in both the wrongful death action against Mizer and the equitable garnishment action against USF. USF claims that the Reeses have not distinguished *Larkin* from the present case or shown why *Larkin* should not be controlling, nor have the Reeses pleaded "something extra." USF argues that the wrongful death judgment should be subject to collateral attack on the issue of whether the trial court, as opposed to the Missouri Division of Labor and Industrial Relations, maintained subject matter jurisdiction over the Reeses' wrongful death claim against Mizer.

USF argues that *Taylor* and *Larkin* did not change Missouri law, but simply interpreted the law which had existed since at least 1982. In support of this argument, USF cites *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 180 (Mo.App. E.D. 1982), in which the Eastern District held that a wrongful death suit brought by a decedent's family against the decedent's fellow employee was barred by the Workers' Compensation Law. However, even if we were to accept USF's reading of *Gaertner*, it would only demonstrate that there was a split in the districts on this issue. This court allowed a wrongful death suit against a decedent's fellow employee in 1990 without the decedent's family pleading "something extra." *Biller*, 795 S.W.2d at 634.

USF contends that the judgment against Mizer was void and, therefore, is subject to a collateral attack. USF further argues that, as a matter of law, the Reeses cannot satisfy the indispensable prerequisite for a garnishment, namely a valid judgment

against Mizer entered by a court with subject matter jurisdiction.

"In general, a final judgment is immune from collateral attack if the court had personal and subject matter jurisdiction and the judgment is not void on its face." *Telge v. Telge,* 677 S.W.2d 403, 405 (Mo.App. W.D.1984). "A motion to quash execution of garnishment is a collateral attack on the judgment." *Div. of Employment Sec. v. Cusumano,* 809 S.W.2d 113, 115 (Mo.App. E.D.1991). "Such a motion has merit only when the record affirmatively discloses that the judgment was void for lack of jurisdiction of the parties or subject matter." *Id.*

In the instant case, the trial court had subject matter jurisdiction at the time the judgment was entered on July 23, 2001. Under present law, a trial court would not have subject matter jurisdiction over a wrongful death action brought against a fellow employee of a decedent without allegations of "something extra." However, at the time the trial court entered its wrongful death judgment against Mizer, *Biller* had not yet been overruled by *Taylor* or *Larkin.* The trial court had jurisdiction when the wrongful death judgment was rendered against Mizer, based upon a reasonable good faith interpretation of *Biller,* which was existing precedent at the time. Therefore, there was a valid final judgment with valid subject matter jurisdiction before the law was changed. We hold that even if the law changes, as it did in this case, a judgment that had valid subject matter jurisdiction *at the time it became final* cannot be collaterally attacked. Otherwise, we are in a position of looking back at an un-appealed final judgment and taking measure of it in the context of a subsequent change in the law. Such a "back to the future" analysis would leave innumerable prior judgments, which were valid at the time

entered, subject to collateral attack, thereby preventing finality.

USF cites several cases in support of its argument that its collateral attack is proper because the judgment against Mizer is void: (1) *First National Bank in Chester v. Conner,* 485 S.W.2d 667, 671–72 (Mo. App.1972), provides that "[a] valid judgment and a consequent valid execution are indispensable prerequisites to a valid garnishment." *Conner* also held that the trial court properly quashed execution on a garnishment where the underlying judgment was void. *Id.* at 672. (2) *Taylor v. Taylor,* 47 S.W.3d 377, 384 (Mo.App. W.D. 2001), which provides that a void judgment may be collaterally attacked and impeached at any time by any party whose rights are affected by the void judgment. (3) *In re the Interest of A.H.,* 689 S.W.2d 771, 773 (Mo.App. W.D.1985), which provides that "a judgment entered without jurisdiction may be collaterally attacked." (4) *Hampton v. Hampton,* 536 S.W.2d 324, 325–26 (Mo.App.1976), reversed the trial court's overruling of ex-husband's motion to quash execution of child support provisions of divorce decree because the decree was void for lack of jurisdiction.

The instant case is distinguishable from all of the cases cited by USF. The cases cited by USF allowed a collateral attack because the underlying judgments lacked subject matter jurisdiction *at the time they were entered.* In the instant case, subject matter *jurisdiction was valid* at the time the underlying wrongful death judgment was entered against Mizer, so USF may not collaterally attack the underlying judgment or quash the instant equitable garnishment action.

We also note that the Reeses' petition filed against Mizer never alleged Gerald Reese was an employee of Barber & Sons at the time of the fatal accident. The petition, which USF declined to defend

against, alleged that Mizer was employed by Barber & Sons, but did not explain the relationship between Gerald Reese and Mizer. Therefore, on its face, the Reeses' petition filed against Mizer did state a cause of action.

Point III is denied.

## Insurance Policy Exclusions

### (Point II)

In Point II, USF argues the trial court erred in entering judgment in favor of the Reeses and against USF, because coverage for Charles Mizer under the liability insurance policy was precluded, in that Mizer was a fellow employee of Gerald Reese and the policy includes an unambiguous "fellow employee" exclusion.

"Whether or not the language of an insurance contract is ambiguous is a question of law." *Auto Owners Mut. Ins. Co. v. Sugar Creek Mem'l Post No. 3976,* 123 S.W.3d 183, 186 (Mo.App. W.D.2003). "In reviewing the language of an insurance policy, this court need not give deference to the trial court's interpretation. Rather, our review is *de novo.*" *Nat'l Union Fire Ins. Co. v. City of St. Louis,* 947 S.W.2d 505, 506 (Mo.App.E.D.1997).

USF cites four cases in support of Point II:(1) *Zink v. Employers Mutual Liability Insurance Co. of Wisconsin,* 724 S.W.2d 561, 562–63 (Mo.App. W.D.1986),[2] held that a "fellow employee" exclusion similar to the one in the instant case excluded coverage for an employee's death in a wrongful death claim arising out of an accident that occurred while a fellow employee was driving a truck owned by the employer. (2) *Baker v. DePew,* 860 S.W.2d 318, 321 (Mo. banc 1993), held that a "fellow employee" exclusion precluded coverage where an employee sustained serious back injuries

while riding in an automobile driven by a fellow employee and owned by the employer. (3) *State Farm Mutual Auto. Insurance Co. v. Bainbridge,* 941 S.W.2d 546, 549 (Mo.App. W.D.1997), held that a "fellow employee" exclusion precluded coverage in a wrongful death claim by a decedent's family where the decedent was killed in an automobile accident while riding in an automobile owned by the employer and driven by a fellow employee. (4) *Short v. Safeco Insurance Co. of America,* 864 S.W.2d 361, 362 (Mo.App. W.D.1993), held that a "fellow employee" exclusion precluded coverage where an employee sustained serious injuries while riding in an automobile driven by a fellow employee and owned by the employer. The fellow employee driving the automobile had fallen asleep at the wheel and lost control of the vehicle. *Id.* at 361.

USF argues the instant case is on point with *Zink* and *Bainbridge* because in those cases, the fellow employee exclusion was applied to preclude coverage for a wrongful death claim. USF also claims the instant case is analogous to *Zink* and *Short,* because the applicable exclusions in those cases prohibited the plaintiffs from recovering both workers' compensation benefits and liability insurance proceeds. USF concludes that under *Zink, Baker, Bainbridge,* and *Short,* the "Fellow Employee" exclusion applies to preclude coverage.

The instant case is distinguishable from *Zink, Baker, Bainbridge* and *Short.* In all of those cases, the insurance policies unambiguously excluded coverage for injuries caused by a fellow employee while in the course of employment. However, the general validity of the fellow employee exclusion is not the dispositive issue in this case. In none of those cases did the interpretation of the policy language involve provi-

---

2. Overruled on other grounds by *Johnston v.* *Sweany,* 68 S.W.3d 398, 404 (Mo.banc 2002).

sions in a policy where a consequential damage claim is specifically excluded in the employer's liability section of the policy but not under the "Fellow Employee" exclusion in the instant case.

USF also argues that despite the fact that the decedent Gerald Reese, not the Reeses themselves, was a fellow employee of Mizer, the "Fellow Employee" exclusion still applies to the Reeses' wrongful death suit against Mizer. USF contends that because the Reeses asserted a wrongful death claim against Mizer under section 537.080.1, they legally stepped into the shoes of Gerald Reese.

Section 537.080.1 provides, in relevant part:

> Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for:
>
> (1) By the spouse or children or the surviving lineal descendants of any deceased children, natural or adopted, legitimate or illegitimate, or by the father or mother of the deceased, natural or adoptive[.]

Missouri "courts have consistently denied a cause of action for wrongful death to the decedent's estate, even when there is no surviving heir." *Sullivan v. Carlisle*, 851 S.W.2d 510, 513 (Mo.banc 1993). "[A] wrongful death claim does not belong to the deceased." *Id.* at 515. "The right of action is neither a transmitted right nor a survival right, but is created and vests in the survivors at the moment of death." *Id.* "[A] wrongful death action belongs to the decedent's survivors, not the decedent, and does not vest in the decedent's estate." *Smith v. Tang*, 926 S.W.2d 716, 719 (Mo.App. E.D.1996). In the instant case, Gerald Reese's survivors, not his estate, brought the wrongful death action.

USF argues that there is no ambiguity between the "Employee Indemnification and Employer's Liability" exclusion and the "Fellow Employee" exclusion. USF points out that the "Employee Indemnification and Employer's Liability" exclusion applies to claims made against an employer while the "Fellow Employee" exclusion applies to claims made against a fellow employee. USF claims that no Missouri case has found any ambiguity in a "fellow employee" exclusion. However, USF also acknowledges that no Missouri case has considered the question of whether the inclusion of language relating to the spouse and children of the injured employee in the "Employee Indemnification and Employer's Liability" exclusion renders the "Fellow Employee" exclusion ambiguous.

### USF Business Auto Liability Exclusions

The two relevant exclusions, number four relating to employer's liability and, number five relating to fellow employee's liability, read as follows:

| 4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY | 5. FELLOW EMPLOYEE |
|---|---|
| "Bodily Injury" to: | "Bodily Injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment. |
| a. An employee of the "insured" arising out of and in the course of employment by the "insured"; or | |

b. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.

 "In determining the intent of the parties to a contract, we review the terms of a contract as a whole, not in isolation." *Tuttle v. Muenks*, 21 S.W.3d 6, 11 (Mo.App. W.D.2000). Each term of a contract " 'is construed to avoid an effect which renders other terms meaningless.' " *Id.* (quoting *Ringstreet Northcrest, Inc. v. Bisanz*, 890 S.W.2d 713, 718 (Mo.App. W.D.1995)).

 The "Employee Indemnification and Employer's Liability" exclusion in this case expressly excludes coverage for spouses, children, parents, and siblings of the employee as a consequence of the employee's bodily injury. By contrast, the "Fellow Employee" exclusion does not expressly exclude coverage for spouses, children, parents, and siblings of the employee as a consequence of the employee's bodily injury. Both exclusions appear immediately adjacent to each other in the policy. "[W]here a term is used in one phrase of a policy, its absence in another phrase is significant." *Williams v. North River Ins. Co.*, 579 S.W.2d 410, 412 (Mo.App. S.D. 1979).

 An ambiguity exists when the meaning of the language in the policy leads to "duplicity, indistinctness, or uncertainty" or "it is reasonably open to different constructions." *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo.banc 1992). Ambiguous language must be construed against the insurer. *Id.* "This rule is especially applicable where insurance is first 'granted' and is then followed by provisions limiting or avoiding liability." *Irelan v. Standard Mut. Ass'n of Cassville*, 379 S.W.2d 815, 819 (Mo.App.1964).

 At the very least, exclusion number five, when read together with the other language of the policy, is reasonably and fairly open to different constructions. A side-by-side comparison of the adjacent exclusions makes it apparent that exclusion number four, dealing with claims brought against the employer, excludes consequential damage claims by family members, while exclusion number five does not. A reasonable person would find this absence of similar exclusionary language significant. The meaning of policy language is that which would reasonably be given by the ordinary person of average intelligence or common understanding, not in the manner of a painstaking lawyer. *Id.* at 818. The conclusion that exclusion number five does not exclude consequential damage claims by family members is a fair and reasonable interpretation of the policy.

In the instant case, there is, at a minimum, an ambiguity as to whether the "Fellow Employee" exclusion prohibits suits by spouses, children, siblings and parents of an injured employee. The specific preclusion of family members' claims in the "Employee Indemnification and Employer's Liability" exclusion and the subsequent absence of family members' claims in the "Fellow Employee" exclusion should be strictly construed against USF and in favor of Mizer.

As the insurer, USF was in the position to draft an insurance contract that specifically precluded claims by family members under the "Fellow Employee" exclusion. USF could have eliminated this ambiguity by specifically precluding family members' claims under both the "Fellow Employee" exclusion and the "Employee Indemnification and Employer's Liability" exclusion.

Because of USF's failure to specifically preclude family members' claims under the "Fellow Employee" exclusion, the trial court did not err in entering judgment against USF.

Point II is denied.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.