Bryan GAVAN, Appellant,

v.

BITUMINOUS CASUALTY CORPORATION, et al., Respondents.

No. SC 88764.

Supreme Court of Missouri, En Banc.

Jan. 15, 2008.

Matthew J. Padberg, Anna E. Spink, St. Louis, MO, for Appellant.

Joseph L. Leritz, St. Louis, MO, for Respondents.

Michael A. Dallmeyer, Adam R. Troutwine, Jefferson City, MO, for Amicus Curiae.

STEPHEN N. LIMBAUGH, JR., Judge.

Bryan Gavan brought an action for declaratory judgment and equitable garnishment against Bituminous Casualty Corporation and Bituminous Fire & Marine Insurance Company to establish coverage and collect the proceeds under comprehensive general liability and umbrella insurance policies issued to Gavan's employer. The trial court entered summary judgment in favor of defendants, and Gavan appealed. After opinion by the Court of Appeals, Eastern District, this Court granted transfer. Mo. Const. art. V, sec. 10. The judgment is affirmed.

From 1996 to 2000, Ste. Genevieve Building Stone Company periodically employed Gavan as its workload demanded. He was so employed on May 15, 2000, when, while working as a bricklayer, he was injured when a ladder on which he was standing collapsed. As a result of his injuries, Gavan sought and received workers' compensation benefits.

Gavan also brought suit against two co-employees, Brace and Gotsch, who worked at the construction site with Gavan, and he subsequently entered into a settlement agreement with them. Under the terms of the agreement, Brace and Gotsch consented to entry of judgment against them, provided that the judgment would only be satisfied from the proceeds of Ste. Genevieve's insurance policies. Thereafter, judgment was entered in favor of Gavan in the amount of $2,300,000, and Gavan then filed the action at hand against the defendant insurance companies. Gavan alleged that under the policies, defendants were required "to pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' ..." and further alleged that Brace and Gotsch were "insured persons" under the policies.

Defendants denied coverage on the ground that the policies expressly exclude coverage for employees who cause bodily injury "to a 'co-employee' while that 'co-employee' is either in the course of his or her employment or performing duties related to the conduct of [the] business...." The policies define "employee" to include a "leased worker," but not a "temporary worker." A leased worker is then defined as "a person leased to [the policyholder] by a labor leasing firm ... to perform duties related to the conduct of [the] business," but the policies specify that a "'[l]eased worker' does not include 'temporary worker.'" "Temporary worker," in turn, is defined as "a person who is *furnished* to [the policyholder] to substitute for a permanent 'employee' on leave or to meet seasonal or

short-term workload conditions." (emphasis added).

In granting summary judgment for defendants, the trial court applied these policy definitions and determined that Gavan was a co-employee and that there was no coverage due to the co-employee exclusion. Gavan contends, however, that he was not a co-employee but rather a temporary worker and, as such, was not subject to the co-employee exclusion. Resolution of the case turns on the proper interpretation of the definition of "temporary worker" and, in particular, whether Gavan was a person who was "furnished" to the employer, Ste. Genevieve.

■■■ The standard of review for summary judgment is *de novo*. *ITT Comm'l Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). *De novo* review in this case requires the application of well-settled principles of contractual interpretation to the insurance policies in question. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). "If the language in an insurance contract is clear and unambiguous, this Court must construe the contract as written...." *Bellamy v. Pacific Mut. Life Ins. Co.*, 651 S.W.2d 490, 495 (Mo. banc 1983). Thus, this Court will give terms their plain and ordinary meaning unless it is clear from the policy that the parties intended an alternate meaning. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993). While ambiguity exists if the term is "reasonably open to different constructions," *Seeck v. Geico General Insurance Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007), an unreasonable alternative construction will not render the term ambiguous. *Blair v. Perry County Mut. Ins. Co.*, 118 S.W.3d 605, 606 (Mo. banc 2003). The issue of "[w]hether an insurance policy is ambiguous is a question

of law." *Todd*, 223 S.W.3d at 160 (internal citation omitted).

■■ Gavan first argues that he was a temporary worker because he was "furnished to" Ste. Genevieve by a third party. He explains that he was a member of the bricklayers union, and the union "furnished" him to Ste. Genevieve. However, the record shows otherwise. Gavan was hired in January 2000 when he came across one of Ste. Genevieve's projects and asked a Ste. Genevieve project manager for a job. Despite evidence that Gavan had obtained work by a referral through the union hall in the past, on this occasion, Gavan's own testimony demonstrates the union was not involved:

Q:  Now, when you started in January of 2000, how did you happen to go with Ste. Genevieve, do you recall?

A:  They had a job going in Arnold that I could see from the highway and I just pulled in there.

Q:  So you just showed up at the job?

A:  Yeah.

Q:  Not through the union hall?

A:  No.

Furthermore, union membership, alone, is insufficient to meet the "furnished to" requirement because membership simply makes a person eligible for employment on a union job. On this record, then, the union did not "furnish" Gavan to the employer.

■■ Gavan's alternative position is that he "furnished himself" to work. Although the policies do not define the term "furnished," the majority of jurisdictions that have interpreted similar policies hold that a worker is not "furnished" unless a third party has been involved in providing or supplying the worker to the insured. This, the cases hold, is the plain and ordinary meaning of the word. *General Agents Ins. Co. of Am. v. Mandrill Corp.*, 243 Fed.

Appx. 961, 968 (6th Cir.2007); *Amco Ins. Co. v. Dorpinghaus,* 2007 WL 313280, at *3, 2007 U.S. Dist. LEXIS 2440, *14–15 (D.Minn.2007); *Nautilus Ins. Co. v. Gardner,* 2005 WL 664358, at *6, 2005 U.S. Dist. LEXIS 4423, at *21 (E.D.Pa.2005); *Carl's Italian Rest. v. Truck Ins. Exch.,* —— P.3d ——, ——, 2007 WL 4198353, at *4 (Colo.App.2007); *Nationwide Mutual Ins. Co. v. Allen,* 83 Conn.App. 526, 850 A.2d 1047, 1057 (2004); *Brown v. Ind. Ins. Co.,* 184 S.W.3d 528, 538 (Ky.2005); *Monticello Ins. Co. v. Dion,* 65 Mass.App.Ct. 46, 836 N.E.2d 1112, 1115 (2005).

Gavan's position, however, is supported by *American Family Mutual Insurance Co. v. As One, Inc.,* 189 S.W.3d 194 (Mo. App.2006), the only Missouri case to directly address the issue. The *As One* court looked to the dictionary definition of "furnish" which is "[t]o provide or supply with what is needed, useful or desirable," and concluded that "[t]here is simply no requirement in the word 'furnish,' or in the policy, that indicates a third entity must furnish the specific worker." *Id.* at 198–99 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 923 (1986)). In a related argument, Gavan also claims that the word "furnish" is at least ambiguous and that ambiguities in insurance policies are to be construed against the drafters, which are the insurance companies.

Consistent with the weight of authority, this Court holds that the term "furnished to," in context and in its plain and ordinary meaning, is not ambiguous and necessarily implies that a third party has been involved in providing or supplying the worker to the insured. As the Colorado Court of Appeals aptly observed in an opinion just last month pertaining to an identical "furnished to" clause, "[i]f a person could furnish himself to an employer, every worker could choose to 'furnish himself' or be told to 'furnish himself' by his employer, and become a 'temporary worker' whenever such a classification would be convenient." *Carl's Italian Restaurant,* —— P.3d at ——, 2007 WL 4198353, at *3. In other words, if the "furnished to" clause were read to include the ability for one to furnish oneself, then the clause would have no meaning. *Id.* (citing *Monticello,* 836 N.E.2d at 1115). In another recent and similar case using the same analysis, *General Agents Insurance Co. of America, Inc. v. Mandrill Corp., Inc.,* 243 Fed.Appx. 961, 968 (6th Cir.2007), the court expressly disavowed the *As One* case itself, stating that the holding in *As One* "effectively reads the phrase 'furnished to' out of the [commercial general liability] policy." This Court is in full agreement. *As One* is overruled.

This interpretation of the policy provisions is also consistent with the statutory scheme of the workers' compensation laws. In *American Family Mutual Insurance Co. v. Tickle,* 99 S.W.3d 25 (Mo.App.2003), the court, addressing identical policy provisions, accurately analyzed the purpose and function of the co-employee exclusion clause in relation to the temporary worker clause. The court stated that "[t]he primary purpose of an employee exclusion clause is to draw a sharp line between employees and members of the general public." *Id.* at 29 (internal citation omitted). This line exists, the court explained, because "the Workers' Compensation Act constitutes the full extent of an employer's liability for any injuries sustained by its employees ... in the course of their employment," while commercial general liability policies are designed to protect against injuries caused to the public or the public's property. *Id.* In this case, the clear purpose of the co-employee exclusion clause is to prevent Ste. Genevieve from being liable to Gavan for the same incident, having already provided workers' compensation benefits to him. Instead, the purpose of

the policies is to provide coverage for Ste. Genevieve's liability to the general public for the negligence of its employees. Ste. Genevieve does not provide liability coverage to its own employees for their co-workers' negligence, which is the province of the workers' compensation laws. The unreasonableness of Gavan's interpretation of the temporary worker clause, then, is that Ste. Genevieve would be twice liable to him.

In sum, plaintiff Gavan was not a "temporary worker," but rather an "employee;" therefore, the co-employee exclusion applies to him, barring his ability to recover under the policies for his co-workers' negligence. The judgment is affirmed.

LAURA DENVIR STITH, C.J., PRICE, RUSSELL and BRECKENRIDGE, JJ., concur.

TEITELMAN, J., dissents in separate opinion filed; WOLFF, J., concurs in opinion of TEITELMAN, J.

RICHARD B. TEITELMAN, Judge, dissenting.

The only issue in this case is whether Bryan Gavan was a "temporary worker" eligible for insurance coverage for his serious and permanent injuries. There is no dispute Gavan temporarily worked for the employer on an as-needed basis. However, the majority concludes that Gavan is not a temporary worker solely because he was not referred to the employer by a third party. This conclusion is not compelled by the language of the insurance policy or existing Missouri precedent. Therefore, I respectfully dissent.

The insurance policy defines the term "temporary worker" as "a person who is *furnished to* [the employer] to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions." The term "furnished to" is not defined in the policy. When interpreting insurance policy language, courts give a term its ordinary meaning unless it plainly appears that a technical meaning was intended. *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. banc 1997).

The word "furnish" means "[t]o provide or supply with what is needed, useful or desirable." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 923 (1986). The ordinary meaning of the term "furnished to" does not necessarily imply that the worker must be referred to the employer by a third party. There is nothing in the plain language of the policy providing that a worker cannot furnish himself or herself to work. The term is subject to alternate plausible interpretations and, as a result, is ambiguous. This ambiguity has led Missouri courts to hold that the term "furnished to" in a virtually identical insurance policy does not require the worker to be referred to the employer by a third party. *See, American Family Mutual Ins. Co., v. As One, Inc.*, 189 S.W.3d 194, 198–99 (Mo. App.2006).

This conclusion is further supported by assessing the definition of "temporary worker" in conjunction with the definition of "leased worker." The policy's definition of a "leased worker" is "a person leased to you by a labor leasing firm . . . ." Unlike the definition of "temporary worker," which imposes no third party requirement, the definition of "leased worker" expressly contemplates the involvement of a third party in providing the worker to the employer. Where a term is used in one clause of a policy, its absence in another clause is significant. *Reese v. U.S. Fire Ins. Co.*, 173 S.W.3d 287, 299 (Mo.App. 2005); *see also, Otto v. Young*, 227 Mo. 193, 127 S.W. 9 (Mo.1910). The absence of any requirement that the "temporary worker" be furnished by a third party is

significant and further supports the contention that a person may furnish himself or herself to the employer. If the term "furnished to" requires a third-party referral, the policy should simply state that. The policy at issue in this case does not do so.

The majority's interpretation of the contract is also problematic because it focuses exclusively on the term "furnished to." The definition of "temporary worker" does not end there. A "temporary worker" is also one that serves as a "substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions." When the term "furnished to" is interpreted in the context of the entire phrase, it is reasonable to conclude that the appropriate focus is on the reason the person is going to work for the employer and not who, if anyone, refers the person to the employer. That is, a worker is considered temporary because he or she is substituting "for a permanent employee on leave or to meet seasonal or short-term workload conditions." The majority's unnecessarily restrictive interpretation of and focus on the term "furnished to" results in covering some workers but not others based upon how they procured the temporary job rather than on the temporary nature of their employment. Under the majority's reading, a short-term worker who responds to an employment advertisement is excluded from coverage while a short-term worker who is "furnished" in some manner by a third party is covered. The logic of this distinction is not consistent with an ordinary understanding of the term "temporary worker."

I would reverse the circuit court's grant of summary judgment in favor of the defendant.