Beth Clemens Boggs, Clayton, MO, for Appellant.

David Corwin, Clayton, MO, for Respondent.

Before BOOKER T. SHAW, P.J., KATHIANNE KNAUP CRANE, J., and MARY K. HOFF, J.

### ORDER

John **GRABLE** and Tammy Grable, Plaintiffs/Appellants,

v.

**ATLANTIC CASUALTY INSURANCE COMPANY, Defendant/Respondent.**

No. ED 91442.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 30, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 10, 2009.

Application for Transfer Denied May 5, 2009.

Defendant filed a motion for summary judgment on the ground that an endorsement to its Commercial General Liability form policy excluded from coverage injuries to "employees," and plaintiff fell within the definition of "employee" contained in and applicable to that endorsement. Plaintiffs appeal, claiming that the endorsement definition of "employee" conflicted with the form policy definition of "employee," which excluded a "temporary worker" like himself, and that the ambiguity so created required construction of the policy in favor of coverage of a temporary worker. We affirm.

On April 11, 2005, plaintiff, John Grable, was injured while working on a temporary basis for Len Joliff, doing business as Len's Tree Service (the insured). Mr. Grable and his wife (collectively plaintiffs) subsequently obtained a consent judgment in their favor pursuant to a settlement agreement with the insured, which provided that plaintiffs could only collect the award from defendant, Atlantic Casualty Insurance Company, or any other liability insurance carrier for the insured. Thereafter, plaintiffs filed a petition for declaratory relief and an equitable garnishment against defendant to satisfy the judgments under defendant's Commercial General Liability Policy # L054000680–1 (the CGL).

The parties filed a joint stipulation of facts in which they stipulated to the facts establishing Mr. Grable's temporary employment with the insured, his accident and injury, the CGL, defendant's refusal to provide the insured with a defense and its denial of the insured's claim, plaintiffs' settlement agreement with the insured, and plaintiffs' judgment against the insured that awarded Mr. Grable $1,410,200 for his injuries and Mrs. Grable $300,000 for loss of consortium.

Defendant thereafter filed a motion for summary judgment in its favor and plain-

Matthew Padberg and Geoffrey R. Jones, The Padberg and Corrigan Law Firm, St. Louis, MO, for appellants.

Joel D. Monson and Dennis S. Harms, Anderson & Gilbert, St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Judge.

Plaintiffs, husband and wife, filed a lawsuit against the defendant insurer to obtain a declaratory judgment and equitable garnishment pursuant to section 379.200 RSMo (2000) to recover the judgment amounts awarded to plaintiffs for bodily injury and loss of consortium against defendant's insured in a negligence action.

tiffs filed a motion for summary judgment in their favor. The trial court entered summary judgment in defendant's favor and denied plaintiff's motion.

### DISCUSSION

We review the entry of summary judgment *de novo*. *ITT Commercial Finance v. Mid-Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). "When the underlying facts are not in question, disputes arising from the interpretation and application of insurance contracts are matters of law for the court." *Federal Ins. Co. v. Gulf Ins. Co.*, 162 S.W.3d 160, 164 (Mo. App.2005).

On appeal, plaintiffs assert that the trial court erred in entering summary judgment in defendant's favor because the CGL policy is ambiguous.[1] In the argument under this point, plaintiffs point out that the definition of "employee" in Section V of the CGL form policy specifically excludes a "temporary worker," but the definition of "employee" in the endorsement does not mention "temporary worker." Plaintiffs conclude that this omission creates an ambiguity because the endorsement's failure to expressly mention "temporary worker," together with the disclaimer leaving all other "terms and conditions" unchanged, leaves the status of temporary worker coverage uncertain, renders the definition of "temporary worker" meaningless, and causes the policy to promise something at one point and take it away at another point. They argue that this ambiguity must be resolved in favor of coverage for a "temporary worker."[2]

The coverage section of the CGL form policy provides, in part:

### SECTION I—COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies....

\*     \*     \*

**2. Exclusions**

This insurance does not apply to:

\*     \*     \*

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business;....

The definitions section of the CGL form policy defines "employee" and "temporary worker" as follows:

### SECTION V—DEFINITIONS

\*     \*     \*

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\*     \*     \*

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee"

---

1. Plaintiffs also claim error in the denial of their own motion for summary judgment. This is not a final, appealable order, even when the denial occurs at the same time the trial court grants summary judgment to the other party. *Missouri Highway & Transp.*

*Com'n v. Overall*, 53 S.W.3d 222, 225 (Mo. App.2001). We therefore decline to review it.

2. The parties do not dispute that Mr. Grable would fall within the "temporary worker" definition in the form policy.

on leave or to meet seasonal or short-term workload conditions.

The endorsement AGL–005 01/05 is attached to the form policy and provides:

## ATLANTIC CASUALTY INSURANCE COMPANY

## EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS

Exclusion **e. Employer's Liability** of Coverage A. Bodily Injury and Property Damage Liability (Section I—Coverages) *is replaced* by the following:

This insurance does not apply to:

(i) "bodily injury" to any "employee" of any insured arising out of or in the course of:

(a) Employment by any insured; or

(b) Performing duties related to the conduct of any insured's business;

(ii) "bodily injury" to any contractor or any "employee" of any contractor arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by such contractor or "employee" of such contractor for which any insured may become liable in any capacity; or

(iii) "bodily injury" sustained by the spouse, child, parent, brother or sister of any "employee" of any insured, or of a contractor, or of any "employee" of any contractor as a consequence of any injury to any person as set forth in paragraphs (i) and (ii) of this endorsement.

This exclusion applies to all claims and "suits" by any person or organization for damages because of "bodily injury" to which this exclusion applies including damages for care and loss of services.

This exclusion applies to any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to which this exclusion applies, including any obligation assumed by an insured under any contract.

*With respect to this endorsement only, the definition of "Employee" in the DEFINITIONS (Section V) of CG0001 is replaced by the following:*

"**Employee**" shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.

As used in this endorsement contractor shall include but is not limited to any independent contractor or subcontractor of any insured and any developer or general contractor.

All other terms and conditions remain unchanged.

AGL–055 01/05

(Emphasis added.)

■■■ In this case, *de novo* review requires that we apply well-settled principles of contract interpretation to this insurance policy. *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. banc 2008). The question whether an insurance policy is ambiguous is a question of law. *Id.* A policy provision is ambiguous if it is reasonably open to different constructions or if it is duplicative, indistinct, or causes the policy's meaning to be uncertain. *Martin v. U.S. Fidelity and Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999). In the absence of an ambiguity, we must enforce the policy as written. *Gavan*, 242 S.W.3d at 720.

■■■ The insurance contract includes the form policy, the declarations, and any en-

dorsements and definitions. *Todd v. Missouri United School Ins. Council,* 223 S.W.3d 156, 163 (Mo. banc 2007); ERIC MILLS HOLMES, 4 HOLMES' APPLEMAN ON INSURANCE 2d section 20.1, at 151 (1998). An endorsement is designed to amend the form policy "to suit the needs of the insured or the insurer or to satisfy particular state requirements." DONALD S. MALEDA & ARTHUR L. FLITNER, COMMERCIAL GENERAL LIABILITY 109 (3d ed.1990). The terms and conditions of the policy are modified and altered to the extent called for by the endorsement. HOLMES, *supra,* at 153–54. *See also* LEE R. RUSS & THOMAS F. SEGALLA, 2 COUCH ON INSURANCE section 21:22 (3d ed.2008). "If the language of the endorsement and the general provisions of the policy conflict, the endorsement will prevail, and the policy remains in effect as altered by the endorsement." *Abco Tank & Mfg. Co. v. Fed. Ins. Co.,* 550 S.W.2d 193, 198 (Mo. banc 1977). *See also Martin,* 996 S.W.2d at 511; *White v. Illinois Founders Ins. Co.,* 52 S.W.3d 597, 598 (Mo.App.2001); *Shields v. Farmers Ins. Co., Inc.,* 948 S.W.2d 247, 249 (Mo.App. 1997).

In this case, there is no ambiguity. The endorsement AGL–0055 01/03 unequivocally states that it "replaces" Exclusion e in the CGL form policy with a new Exclusion e. Exclusion e in the endorsement also excludes bodily injury to an "employee;" however, it also unequivocally provides "with respect to this endorsement only" that the definition of "employee" in the Section V of the CGL form policy "is replaced" by the definition of "employee" contained in the endorsement. This language clearly provides that the definition of "employee" under the endorsement is different from the definition of an "employee" under the form policy. *See Miller v. O'Brien,* 168 S.W.3d 109, 115–16 (Mo. App.2005). This definition is clear and unambiguous and provides that an "em-ployee" includes "any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor." This broad definition clearly includes a temporary worker because it includes any worker "hired, loaned, leased, contracted, or volunteering." The definition in the endorsement replaces and supersedes the definition in the CGL form policy; it does not conflict with it.

The statement in the endorsement that "[a]ll other terms and conditions remain unchanged" does not create an ambiguity on the theory that the definition of "temporary worker" remaining in the CGL form policy is rendered meaningless. The definition of "employee" in the endorsement is clearly and unequivocally limited to that endorsement and does not remove the definition of "employee" that excludes a "temporary worker" from the rest of the policy. *See Miller,* 168 S.W.3d at 116.

The fact that coverage for a "temporary worker" is provided in an exception to an exclusion in the CGL form policy is irrelevant to our analysis of the exclusion. "There is no reason why coverage 'saved' by an exception to an exclusion of the policy should be any more exempt from exclusion by the endorsement than are the general coverage provisions themselves." *Abco,* 550 S.W.2d at 198.

██ Finally, the endorsement is not ambiguous on the theory that it takes away coverage that was promised in the form policy. The Missouri Supreme Court has addressed this argument and clarified that exclusions and definitions do not make an insurance policy ambiguous because they limit or exclude coverage given in the form policy. *Todd,* 223 S.W.3d at 162–63. "Insurance policies customarily include definitions that limit words used in granting coverage as well as exclusions that exclude

from coverage otherwise covered risks." *Id.* "Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Id.* at 163.

Endorsement AGL–055 is not open to different constructions and does not cause the policy's meaning to be uncertain. The trial court did not err in finding the policy to be unambiguous. This point is denied.

*Conclusion*

The judgment of the trial court is affirmed.

BOOKER T. SHAW, P.J. and MARY K. HOFF, J., concur.