

# Missouri Court of Appeals

### Southern District

### Division One

| | | |
|---|---|---|
| WILLIAM SOUTHERLY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. SD33165 |
| | ) | |
| UNITED FIRE & CASUALTY COMPANY, et al., | ) | FILED: October 27, 2014 |
| | ) | |
| Respondents. | ) | |

APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael M. Pritchett, Judge

(Before Francis, P.J./C.J., Bates, J., and Scott, J.)

**<u>AFFIRMED</u>**

PER CURIAM.  William Southerly obtained personal injury judgments against four co-workers after a workplace accident, then sought to collect from the employer's commercial general liability (CGL) and umbrella insurance policies.  A key issue was whether Southerly, a seasonal worker, was a "temporary worker" not subject to the policies' employee exclusions.  On cross-motions for summary judgment, the trial court ruled against Southerly.  We affirm.

## Background

Southerly worked at Cardwell's cotton gin for the four-month ginning seasons in 2007, 2008, and 2009. After suffering a 2009 workplace injury there, he sought and recovered $150,000 from Cardwell's workers' compensation insurer. He also filed a personal injury suit against various co-workers, made § 537.065 agreements[1] with them, obtained a $4 million judgment collectable only from Cardwell's CGL and umbrella policies issued by United Fire (Insurer), then sued to equitably garnish Insurer.

Predictably, the policies excluded coverage if Southerly was an "employee." Such exclusions developed alongside workers' compensation law to draw a "sharp line" between liability to employees and to the general public. ***American Family Mut. Ins. Co. v. Tickle***, 99 S.W.3d 25, 29 (Mo.App. 2003). Injured employees get workers' compensation, while CGL insures a company's liability to the public. ***Id.*** Employee policy exclusions protect employers who have provided workers' compensation benefits from being twice liable to a worker for the same incident. ***Gavan v. Bituminous Cas. Corp.***, 242 S.W.3d 718, 721-22 (Mo. banc 2008).

***Gavan***, factually similar to this case, is illustrative. From 1996 to 2000, a builder periodically hired Gavan, who got hurt on the job in 2000 and collected workers' compensation. Gavan also sued two co-workers, made a § 537.065 agreement with them, took a $2.3 million judgment to be satisfied only from the

---

[1] "In Section 537.065, RSMo 2000, the General Assembly authorized a party claiming damages for personal injuries or death to enter into an agreement with a tortfeasor before judgment against the tortfeasor to limit the claim's satisfaction to the tortfeasor's specific assets, including insurance." ***Taggart v. Maryland Cas. Co.***, 242 S.W.3d 755, 758 (Mo.App. 2008).

builder's CGL and umbrella policies, then sued to equitably garnish the insurer, claiming he was a "temporary worker" not subject to employee exclusions. Specifically, the *Gavan* policies – as in this case – defined "employee" to exclude a "temporary worker," *i.e.*, "a person who is *furnished to* [the policyholder] … to meet seasonal or short-term workload conditions" (emphasis added).

Gavan lost at trial and in our supreme court, which held, consistent with most other jurisdictions, that "furnished to" plainly and "necessarily implies that a third party has been involved in providing or supplying the worker to the insured." 242 S.W.3d at 721. No third party had furnished Gavan, so he was not a "temporary worker," but an employee subject to employee exclusions that barred his recovery under the policies. *Id*. at 722. Our supreme court also noted what *Tickle* earlier had detailed: CGL and workers' compensation policy terms are coordinated with each other and with applicable law so as to cover injured persons under one policy or the other, but not both. *Tickle*, 99 S.W.3d at 29-30, *cited in Gavan*, 242 S.W.3d at 721-22.

In the instant case, the trial court considered policy definitions and employee exclusions identical to those in *Gavan* and reached the same result. Southerly's second point on appeal challenges the finding that he, like Gavan, was an employee and not a temporary worker. We consider that point first.

### Point II – Temporary Worker Coverage

Southerly acknowledges that his "temporary worker" argument for avoiding employee exclusions hinges on whether he was "furnished to" Cardwell, as there is "no dispute that the phrase 'furnished to' requires the involvement of a third party."

3

***Mendenhall v. Prop. & Cas. Ins. Co. of Hartford***, 375 S.W.3d 90, 92 (Mo. banc 2012) (citing ***Gavan***).

In Point II, Southerly states that his 2007 hiring was on a co-worker's recommendation, and argues from ***Mendenhall*** that he was "furnished" by this recommendation.[2]  Even if we accepted this reasoning *arguendo* as to the 2007 hiring, Southerly was injured two seasons (and thus two hirings) later, and his own testimony demonstrates that he was not "furnished to" Cardwell by referral in 2009:

Q:  In your mind why did you get the job in 2009?  Was it because they knew you and you did a good job?

A:  Yes.

Q:  Or just because you knew - -

A:  I knew what I was doing.

Q:  They obviously like the work that you had been doing?

A:  Yes, sir.

Q:  And they thought that you were a hard worker?

A:  Yes, sir.

Q:  It wasn't just because you knew Shawn [Matheny]?

A:  Right.

Q:  Or just because you knew Johnny [Zolman]?

A:  Right.

---

[2] In ***Mendenhall***, a sharply-divided Missouri Supreme Court found "temporary worker" status where an employer "relied solely" on a referral in deciding to hire a worker without any interview, and "the employment decision [was] based solely on the third party referral."  375 S.W.3d at 93.

*Compare Gavan*, 242 S.W.3d at 720, noting evidence that Gavan had obtained work by referral in the past, but that Gavan's own testimony demonstrated that his 2000 hiring was not based on a referral.

This case is like *Gavin*, not *Mendenhall*. Point II fails.

## Point I – Executive Officer Coverage

As to one defendant only, Southerly offers a second theory of coverage. The policies cover bodily injury claims against Cardwell's "executive officers." Southerly urges that defendant Williams, who managed Cardwell's gin, was an "executive officer" since his position was created by Cardwell's bylaws. We do not find this argument persuasive.

The policies at issue define "executive officer" as someone "holding any of *the officer positions* created by [Cardwell's] charter, constitution, by-laws or any other similar governing document." (Our emphasis.) According to relevant portions of Cardwell's by-laws (all emphasis ours):

- "The *officers* of the Corporation shall be a President, one or more Vice-Presidents (the number thereof to be determined by the Board of Directors), a Treasurer, a Secretary and such other officers as may be *elected* in accordance with the provisions of this Article."

- "No person shall be eligible *to any office* except the offices of Secretary and Treasurer or any assistants to said offices, who is not a Director of the Corporation."

- "The *officers* of the Corporation shall be *elected annually* by the Board of Directors at the first meeting of the Board of Directors held after each annual meeting of Shareholders."

- "The Board of Directors, at its discretion, may *appoint* a Manager whose powers and duties shall be prescribed by the Board of Directors."

5

Thus, Cardwell's by-laws (1) *require* officers to be corporate directors (with exceptions inapplicable here) and to be elected annually, and (2) *allow* (not require) a non-director manager to be appointed (not elected) with no set term of service.

Defendant Williams was appointed, not elected, to a manager position he held for 27 years, and he was never a corporate director. He was not an "executive officer" under Cardwell's by-laws or as defined in its insurance policies. Southerly offers no reported cases, Missouri or otherwise, interpreting by-laws in the manner he suggests.[3] We deny Point I.

## Conclusion

Southerly admits that he must win Point I or Point II to prevail on appeal. Thus, we deny his other points as moot and affirm the judgment.

---

[3] Southerly cites a Pennsylvania trial court memorandum, not formally published and apparently lacking precedential value even in that state, which considered whether a township engineer was an "executive officer" under Pennsylvania's "Second Class Township Code," 53 Pa. Stat. §§ 65101 *et seq.*

6


WILLIAM SOUTHERLY,          )
                                   )
          Appellant,         )
                                   )
   vs.                      )    No. SD33165
                                   )
UNITED FIRE & CASUALTY COMPANY, et al., )   FILED: October 27, 2014
                                 )
          Respondents.     )

APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael M. Pritchett, Judge

**CONCURRING OPINION**

While I fully concur in the principal opinion, I also reject Point II for a second reason: Southerly should not twice collect from Cardwell's insurers, first by claiming that he was an employee, and now by claiming the contrary.

"[T]here is ample case law to support the contention that parties are not allowed to take clearly inconsistent positions in differing lawsuits." ***In re Contest of Primary Election Candidacy of Fletcher***, 337 S.W.3d 137, 145 (Mo.App. 2011). "Missouri courts in particular have consistently refused to allow litigants to take contrary positions in separate proceedings to ensure the integrity of the judicial

process." *Id*. at 146. "This doctrine of judicial estoppel can apply to quasi-judicial administrative actions." ***Shockley v. Dir., Div. of Child Support Enforcement***, 980 S.W.2d 173, 175 (Mo.App. 1998). Litigants cannot take one position in one proceeding to obtain benefits, but take a contrary position in a later proceeding to obtain benefits from the contrary position. ***Vinson v. Vinson***, 243 S.W.3d 418, 422 (Mo.App. 2007). In these situations, we consider three issues:

1. Was the party's later position clearly inconsistent with its earlier position?

2. Was the party successful in persuading a tribunal to accept its earlier position?

3. Would the party asserting inconsistent positions gain an unfair advantage or impose unfair detriment on its opponent if not estopped?

*Id*.

As to #2 above, Southerly called himself, and claimed he was, an "employee" in obtaining $150,000 from Cardwell's workers' compensation insurer.

As to #3, our supreme court recognized the unfairness of double-dipping in ***Gavan v. Bituminous Cas. Corp.***, 242 S.W.3d 718, 721-22 (Mo. banc 2008).

Finally, as to #1, it is clearly inconsistent that Southerly now denies the "employee" status he claimed in collecting workers' compensation, especially when our courts "'consistently turn to the Workmen's Compensation Act in determining the meaning of the word "employee" as used in exclusion clauses of liability insurance policies ....'" ***American Family Mut. Ins. Co. v. Tickle***, 99 S.W.3d 25, 29 (Mo.App. 2003) (quoting ***Ward v. Curry***, 341 S.W.2d 830, 836 (Mo. 1960)).

Having claimed "employee" status to reap the benefits of Cardwell's workers'

2

compensation policy, Southerly cannot disavow that status to double-dip against other policies insuring Cardwell's liability to the general public.[1]

DANIEL E. SCOTT – CONCURRING OPINION AUTHOR

---

[1] As noted by the principal opinion, **Tickle**, 99 S.W.3d at 29-30, details legislative, regulatory, and insurance industry efforts to cover temporary workers and employees (direct or statutory, including leased workers) under either CGL or workers' compensation, but not both. Neither estoppel nor double-dipping were concerns in Southerly's cited case of **Mendenhall v. Prop. & Cas. Ins. Co. of Hartford**, 375 S.W.3d 90 (Mo. banc 2012), where the decedent was a farm laborer not covered by workers' compensation. **Id**. at 91 n.1.